## J. C. Spencer, Appellee, v. Standard Roofing Company of Chicago, Appellant.

## Gen. No. 15,926.

1. MASTER AND SERVANT—*duty to furnish safe place.* The duty resting on an employer to use ordinary care to furnish his employes a reasonably safe place in which to work does not end when the employe is put at work in a place that is then safe, but it is an abiding and continuing obligation on the employer to use ordinary care to see to it that the place where his employes are working continues to be reasonably safe while they are there employed; and where the safety of the place depends upon the use to which it is put after the employe is placed there, it is the duty of the employer to use ordinary care to prevent its use in any way that will render it otherwise than reasonably safe for the employe.

2. MASTER AND SERVANT—*when doctrine of fellow-servants does not apply.* If the fellow-servant in performing the act which caused the injury to the plaintiff was obeying an order of his foreman, the doctrine of fellow-servants does not apply.

3. MASTER AND SERVANT—*who are not fellow-servants.* One in authority over the plaintiff is as to such authority not his fellow-servant notwithstanding he may have been a fellow-servant in the doing of certain work in which they took an equal part.

4. NEGLIGENCE—*how proximate cause determined.* If the evidence is susceptible of several interpretations, the question of proximate cause is one of fact to be determined by the jury.

5. INSTRUCTIONS—*when refusal of correct will not reverse.* The refusal of a correct instruction will not reverse if its substance is substantially contained in another instruction given.

6. INSTRUCTIONS—*when submission of question as one of law cannot be complained of.* A party cannot complain of the court's having submitted a question to the jury as one of law if he has so treated it in instructions given at his own instance.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. ARTHUR H. CHETLAIN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Affirmed. Opinion filed October 4, 1911.

HANS L. HOWARD, for appellant.

ROBERT J. NORDHOLD and SYMMES & KIRKLAND, for appellee.

MR. JUSTICE GRAVES delivered the opinion of the court.

This is an appeal from a judgment of the Superior Court for $500, in a suit begun by appellee for injuries received by him, while in the employ of appellant as a gravel roofer. Appellant, at the time of the occurrence out of which this action arose, was a gravel roofing company. On the day in question, appellant sent appellee and four other employes to repair a roof on a three-story flat building at the corner of Van Buren street and Francisco avenue. Joe Smith was the foreman in charge of the job. William McFarlane, Louis Heller and appellee were roofers. The fifth man was the driver of the team that conveyed the men and implements, including a tar kettle to the place of work. The tar kettle, by the order of foreman Smith, was placed in an alley at about the center of the rear end of the building to be repaired, and from fifteen to twenty feet east of the Francisco avenue sidewalk. The alley was from twelve to fourteen feet wide. The rear end of the building to be repaired abutted on the south side of the alley, and was about forty feet wide.

After the kettle was placed in the alley, the fore-

man and the three roofers, including appellee, in pursuance to the order of the foreman, went up on the roof to clean it, preparatory to making the repairs. This was done by sweeping up the dirt and refuse matter and throwing it off of the building into the alley. The driver was stationed at the entrance to the alley at the east side of Francisco avenue to prevent persons from being injured by the dirt, as it was thrown down into the alley. After the foreman and the roofers had been so engaged for an hour or more, appellee was sent by the foreman to take the place of the driver at the entrance to the alley at the east side of Francisco avenue "to watch that no one got hurt," while the dirt was being thrown down. At the time the foreman sent appellee down to take the driver's place as watchman, the foreman told him he was to be kettleman that day. It was the duty of the kettleman to look after the kettle and get the tar in condition, so that it could be taken up in the buckets and be used on the roof. This was done by keeping a fire going under the kettle. For a time after appellee was ordered down to take the place of the driver, the foreman and the two remaining roofers continued to throw dirt and small pieces of wood down into the alley. Then the foreman leaned over the wall at the rear of the building and called down to appellee from the roof, and told him the "stuff" was all down. Appellee then went to the tar kettle and began firing it up. In about five or ten minutes after appellee started to work at the kettle, McFarlane came to the rear end of the building, nearly over appellee, and said, "Look out below," and at the same time threw down three or four boards from three to five feet long, six inches wide, and three-quarters of an inch thick. When McFarlane said, "Look out below," appellee replied, "One second," "Hold there," or "Hold that," but the boards were then out of the control of McFarlane, and he again called down "Look out Spencer." One of the boards struck appellee's

foot and inflicted a serious injury. In addition to the foregoing facts, about which there is no controversy, appellee testified that, when the foreman told him the "stuff" was all down, he also said, "Get the kettle ready for patching just as soon as you can." Joseph Smith, the foreman, called as a witness by appellant, testified that he did not say to appellee, "Get the kettle ready," but that he had told him he was to be the kettleman that day, and that he knew, when he told appellee the "stuff" was all down, "he would go right on and work at the kettle." The foreman further testified that he did not tell McFarlane that he had told appellee the "stuff" was all down; that he, McFarlane and Heller, continued to work on the roof; that all the time they were doing this work, he knew appellee was at the kettle; that he did not tell either Heller or McFarlane that appellee was at the kettle, and that, when he told appellee the "stuff" was all down, McFarlane was working, and was not paying any attention to what he, the foreman, was doing. McFarlane further testified that he asked the foreman, if he should throw down the boards on the roof, and that the foreman replied, "We want to save a few of them,—them we can use,—and them we cannot use we will throw down." This the foreman flatly denies saying.

The duty resting on an employer to use ordinary care to furnish his employes a reasonably safe place in which to work does not end when the employe is put at work in a place that is then safe, but it is an abiding and continuing obligation on the employer to use ordinary care to see to it that the place, where his employes are working, continues to be reasonably safe, while they are there employed; and where the safety of the place depends upon the use to which it is put after the employe is placed there, it is the duty of the employer to use ordinary care to prevent its

use in any way that will render it otherwise than reasonably safe for the employe.

In the case at bar, when the foreman told appellee to do down and take the teamster's place, he also told him he was to be kettleman for that day, and he testified, "I told Spencer (appellee) that the stuff was all down * * * when I told Spencer that the stuff was all down, I knew he would go right on and work at the kettle." These two announcements to appellee, together with the knowledge of the foreman that appellee would go right on and work at the kettle, amounted to an express order to him to then go there to work, and was the order of appellant made through its foreman and vice principal. It thereupon became the duty of appellant to use ordinary care to see to it that the place was reasonably safe, and that nothing should be done by the other employes of appellant to render it otherwise, and appellee had a right to assume that appellant would perform that duty. It is evident from the fact that the foreman placed the driver, and afterwards appellee, at the entrance of the alley to prevent persons from being injured by the refuse matter that was being thrown down, that he considered the alley an unsafe place while that matter was being thrown down. Notwithstanding that fact, and the further fact that he had stilled all apprehensions of danger that appellee might otherwise have had by telling him "the stuff was all down," he failed to tell the other roofers working on the roof that appellee was working at the kettle, or that he had told appellee the "stuff" was all down, or not to throw any more down, or to warn appellee if they did so, and McFarlane, not knowing appellee was working at the kettle, threw down the board that struck and injured him.

It is contended by appellant that McFarlane was a fellow servant, and that "if the act of McFarlane was a voluntary act on his part, and was the proximate cause of the injury, there can be no recovery."

That McFarlane was a fellow servant with appellee there can be no doubt, but if by "voluntary act" appellant means an act conceived and carried out by McFarlane, independent of any control or direction of the foreman, then the throwing down of the boards was not his voluntary act. He, with the other roofers, had been ordered by the foreman to clean the roof by sweeping up and throwing into the alley the dirt and debris thereon. He had been engaged in the performance of that work for an hour or more before the boards in question were thrown down. There had been no countermand of that order, and there was still matter to be thrown down. Even if there was no specific order given by the foreman to McFarlane to throw down the particular board that caused the injury, as McFarlane testified, still, in throwing down that board, he was not taking the initiative, but was carrying out the order of his foreman, given at the time he started to work on the roof.

Counsel further insists that it was the negligent way McFarlane threw the board down, and not the fact of its being thrown down, or the order to throw it down, that was the proximate cause of the injury; that McFarlane knew appellee was at the kettle, and knew it was his duty to call down before he dropped the board, and that he intended to do so, but lost control of the board before he intended to drop it. The evidence does not bear out this contention. There is no evidence that McFarlane knew appellee was at the kettle when he called out, "Look out below," and dropped the boards; on the contrary, he testified that he did not see him before he threw down the boards and said, "Look out below." He did know appellee had been sent down to stand watch at the entrance to the alley, while the dirt and debris was being thrown down. He knew there was still dirt and debris to be thrown down; he did not know the foreman had told appellee it was all down, and he had a right to assume that appellee

was still standing watch at the entrance to the alley. There had been an interval of from five to ten minutes during which nothing had been thrown down, and on resuming that operation it was but natural that he should call out, "Look out below." McFarlane testified, "When I got some of these boards in my arms, I went over to the wall, as I had been throwing down right along, and threw them down the same way and hollered 'Look out below,' and heard Jack holler, 'Hold that' * * * I seen they were going to hit him, and I hollered again, 'Look out Spencer.'" On cross examination he says: "By the time appellee said 'Hold that' the boards were gone; that they were going at the time he said, 'Look out below.'" Appellant contends that the boards were not intentionally thrown down by McFarlane, but that he accidently dropped them before he intended to do so, and that it was the negligence of McFarlane in allowing the boards to prematurely drop that caused the injury. The abstract of McFarlane's evidence gives some color to this contention, but an examination of the record discloses that the language, from which that inference might be drawn, is not the language of the witness, but is that of the cross examiner, to which categorical answers were made by the witness. Wherever the witness framed his own language, he makes it clear that he intentionally threw the boards down at the same instant that he said "Look out below." There is nothing in this to indicate that McFarlane was negligent in the manner in which he threw the boards down.

It is next urged by appellant that Joseph Smith was a fellow servant with appellee, and not a vice principal, because he worked with him in the same general manual labor, and himself took orders from the superintendent and did not hire or discharge the men. We have searched the record in vain for any evidence that Smith did or did not hire and discharge the men, or that he took or did not take orders from the super-

intendent. The evidence does show that Smith worked with the other roofers in cleaning the roof, but it also shows beyond controversy that he was the foreman in charge of all the men on this job; that, as he expressed it, he was boss of the job and directed the work of the men; that it was Smith who directed what part of the work should be done first, how it should be done and who should do it. In these respects, Smith had the authority to command, and it was the duty of the others to obey him. While Smith and appellee may have been fellow servants in the doing of work in which they each took an equal part, they were not fellow servants in respect to the exercise of authority one over the other. I. C. R. R. Co. v. Atwell, 198 Ill. 203.

In respect to the exercise of authority to direct appellee and the other roofers as to what they should do and when and how they should do it, Smith was beyond question the vice principal of appellant.

The setting in motion of the instrumentality that produces an injury is not necessarily the proximate cause of the injury. Whether it is so or not depends upon the circumstances of each particular case.

Appellee claims that the act of the fellow servant in throwing down the board was not the proximate cause of the injury, but that, in ordering appellee to work at the kettle and in failing to prevent McFarlane from throwing down more refuse material, while appellee was there, was negligence; that in so doing appellant did not use ordinary care to keep the place where appellee was placed at work reasonably safe. These are questions of fact to be determined by the jury. The verdict of the jury was that appellant was guilty, which amounted to a finding that the negligence of appellant and not that of a fellow servant was the proximate cause of the injury. We think the evidence in the case fairly tends to support the finding of the jury.

Complaint is made that an instruction offered by

appellant, which announced that under the proof Mc-Farlane and appellee were fellow servants, and that appellant could not be held liable for the negligence of a fellow servant, was refused. While this instruction correctly states the law, and while the evidence clearly shows that McFarlane and appellee were fellow servants, we think, for several reasons, it was not error to refuse it.

In the first place, there was no claim made by appellee that the negligence of McFarlane caused the injury; second, the court, at the request of appellant by at least five instructions submitted to the jury to be determined by them as a question of fact, whether McFarlane and appellee were fellow servants, and fully defined the doctrine of fellow servants, and in the series told the jury that, if the injury was caused by the negligence of a fellow servant, appellee could not recover. After inducing the court to give that series of instructions, appellee cannot complain that the court refused to instruct the jury that, under the facts in this case, the question of fellow servant was one of law for the court and not one of fact for the jury, and, lastly, we are of the opinion that the evidence warrants the verdict, and that, if the instruction had been given, the verdict could not have been different.

Finding no error in the rulings of the court and the verdict being in accord with the weight of the evidence as we view it, the judgment of the court below is affirmed.

*Judgment affirmed.*